IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HILL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:17-CV-0025-BL |
| | ) | |
| FIRST FINANCIAL BANK SHARES, et al., | ) | |
| | ) | |
| Defendants. | ) | Referred to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER TO SHOW CAUSE

On February 21, 2017, James W. Myart, Jr., filed this action on his own behalf and on behalf of *pro se* Plaintiffs Christopher Hill and Harriet Hill (collectively referred to as "the Hills") through a purported power of attorney.[1] *See* Compl. at 1. The litigation arises under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq., based upon allegations that defendants provided insufficient notice of adverse actions, i.e., denials of loan applications. *See id.* at 1-10. The complaint is replete with errors that appear to show that it is poorly drafted and most likely an attempt to cut-and-paste from a prior document. *See, e.g., id.* at 2 ("Venue is proper as the Defendants transact its business in the Middle District of North Carolina, Greensboro Division."), 4 ("In or about February of 2017, CHRIS HILL, HARRIET HILL and JAMES MYART and her husband, David llen Plaintiffs C. Hill, H. Hill and Myart and Myart, submitted a completed joint application for a

---

[1] No one provides any power of attorney in this case. The Court, however, may take judicial notice of the Power of Attorney filed in *Hill v. McKenzie*, No. 1:17-CV-0021-BL, a related case filed in this Court. Attached as an exhibit to the complaint in that case is an agreement purporting to appoint Mr. Myart as "Attorney-in-fact" for Mr. Hill and to grant Mr. Myart power of attorney to take various actions on Mr. Hill's behalf, including litigation matters. *See Hill*, No. 1:17-CV-0021-BL (¶¶ 2 and 6f of Ex. 1 to doc. 1). That agreement purports to provide for compensation to Mr. Myart as a "consultant," permit co-owning and mingling of assets, and permit Mr. Myart to personally gain from management of Mr. Hill's affairs. *See id.* (¶¶ 7-9).

loan . . ."). In addition, the complaint provides only an address or contact information for Mr. Myart.

Each plaintiff has submitted an Application to Proceed in District Court Without Prepaying Fees or Costs (docs. 3, 4, and 5) (hereinafter "IFP Motions"). However, Mr. Myart did not sign his application and the other applications were signed on their behalf by Mr. Myart through the Power of Attorney. The application for Harriet Hill states "Will Supplement" instead of providing the information requested on the form. *See* Doc. 4.

For purposes of this order, the Court will assume without deciding that Mr. Myart has a valid Power of Attorney for the other Plaintiffs. Even with that assumption, however, Mr. Myart is not authorized to represent any other *pro se* party in federal court. By statute, a federal litigant "may plead and conduct their own cases personally or by counsel." *See* 28 U.S.C. § 1654. Based on all information before the Court, Mr. Myart is no longer an attorney authorized to practice law in Texas or elsewhere. "Mr. Myart was a practicing attorney for many years before surrendering his bar card in lieu of disbarment in 2008." *Myart v. Taylor*, No. 5:16-CV-736-DAE, 2016 WL 5376227, at *1 n.1 (W.D. Tex. Sept. 26, 2016); *accord Myart v. Glosson*, No. 5:16-CV-865-XR, 2016 WL 5389248, at *1 n.1 (W.D. Tex. Sept. 26, 2016) ("Myart used to be a licensed attorney, but has since resigned in lieu of disciplinary action.").

Indeed, on June 17, 2008, the Supreme Court of Texas accepted Mr. Myart's resignation as attorney and counselor at law as "in the best interest of the public and the profession." *See In re Myart*, Misc. Docket No. 08-9072, at 1 (Tex. June 17, 2008). In addition to cancelling Mr. Myart's law licence and deleting him "from the list of persons licensed to practice law in Texas," the Texas Supreme Court permanently enjoined him

> from practicing law in the State of Texas, holding himself out as an attorney at law,

performing legal services for others, giving legal advice to others, accepting any fee directly or indirectly for legal services, appearing as counsel or in any representative capacity in any proceeding in any Texas court or before any Texas administrative body (whether state, county, municipal, or other), or holding himself out to others or using his name in any manner in conjunction with the words "Attorney at Law," "Counselor at Law," "Lawyer," or "Attorney."

*Id.* at 1-2. Furthermore, given Mr. Myart's own *pro se* history of litigation, the Western District of Texas has barred him filing suit on his own behalf in that court "without first obtaining leave of Court and permission from a district judge [to] protect the court and innocent parties while preserving his legitimate rights." *Glosson*, 2016 WL 5389248, at *4.

As an unlicensed, former attorney, Mr. Myart may not represent anyone other than himself in this action. Section 1654 does not permit a non-attorney to represent a litigant in federal court and even a valid power of attorney does not permit it. *Williams v. United States*, 477 F. App'x 9, 11 (3d Cir. 2012) (per curiam). While a power of attorney "may confer certain decision-making authority under state law," it does not change the requirements of § 1654. *See id.*; *accord Speed v. Bank of N.Y.*, No. 3:14-CV-3425-L-BN, 2014 WL 6473420, at *2 (N.D. Tex. Nov. 18, 2014) (recommendation of Mag. J.), *case dismissed without addressing recommendation*, 2014 WL 6487291 (N.D. Tex. Nov. 19, 2014) (declining to address recommendation while recognizing its correctness). "[T]he holder of a power of attorney is not authorized to appear pro se on behalf of the grantor." *Estate of Keatinge v. Biddle*, 316 F.3d 7, 14 (1st Cir. 2002) (recognizing such principle under the laws of Maine). To proceed "*pro se* means to appear for one's self," therefore, "a person may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (cited with approval in *Martin v. City of Alexandria*, 198 F. App'x 344, 346 (5th Cir. 2006) (per curiam)). "A power of attorney relationship between a *pro se* plaintiff and the individual

appearing on [his or] her behalf does not alter this principle." *Leyfert v. Commw. of Pa. House of Reps.*, No. Civ. A. 05-4700, 2005 WL 3433995, at *3 (E.D. Pa. 2005). Similarly, an "attorney-in-fact" may not litigate a *pro se* action on behalf of another. *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001).

Although some circumstances may warrant filing on another's behalf as a "next friend," "individuals not licensed to practice law by the state may not use the 'next friend' device as an artifice for the unauthorized practice of law." *Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978). Nothing before the Court indicates that use of the "next friend" device is proper in this case. When a non-attorney is not qualified to act as a "next friend," the non-attorney "may not participate in the unauthorized practice of law by preparing legal papers, filing petitions and briefs, and generally acting as an attorney in violation of state and federal provisions governing the unauthorized practice of law." *Id.* Even a valid power of attorney executed by one or more of the other *pro se* plaintiffs does not invest the non-attorney with such authority. *Id.*

As a non-attorney, Mr. Myart "lacks standing to file this action on behalf" of anyone but himself. *See Leyfert*, 2005 WL 3433995, at *3. "It follows from the rule prohibiting lay representation that any pleadings filed through lay representation must be disregarded as a nullity." *Umstead v. Chase Manhattan Mortg. Corp.*, No. 7:04-CV-00747, 2005 WL 2233554, at *2 (W.D. Va. Sept. 13, 2005). Consequently, as to the Hills, the complaint is void *ab initio*, *see id.*, and is subject to dismissal for lack of jurisdiction, *see Leyfert*, 2005 WL 3433995, at *3. However, from the information before the Court, it appears that the Hills have simply placed their trust in Mr. Myart. Nothing indicates that they recognize Mr. Myart's inability to act as anyone's legal attorney or that the granted Power of Attorney – even assuming its legal validity – does not grant Mr. Myart the ability

to proceed with this case on behalf of anyone but himself. At this stage of the litigation, the Court thus finds that an outright dismissal of the complaint as to the Hills is not warranted without providing them an opportunity to cure the deficiencies of their complaint and their submitted IFP Motions.

Because Mr. Myart is proceeding *pro se* as permitted by 28 U.S.C. § 1654, the complaint as to him does not suffer the same procedural defect as it does with respect to the Hills. Nevertheless, it is not without deficiency. Although Mr. Myart purports to bring this action on behalf of himself and the other *pro se* plaintiffs, it is unclear from the complaint how he has standing to file the action on his own behalf. "Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Like all jurisdictional requirements, this requirement is "not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). Furthermore, the Supreme Court "insist[s] on strict compliance" with the requirement. *Raines*, 521 U.S. at 819.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Jurisdiction is essentially the authority conferred by Congress to decide a given type of case one way or the other." *Hagans v. Lavine*, 415 U.S. 528, 538 (1974). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The courts "have an inde-

pendent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *accord Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir. 2015).

To satisfy the standing requirement, Mr. Myart "must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines*, 521 U.S. at 819. While the complaint alleges that he is "consumer" and "applicant" for purposes of the claims under the ECOA and seems to indicate that, with the other plaintiffs, Mr. Myart completed two loan applications in order to pay Myart Consulting Group, such conclusory allegations are insufficient to establish Mr. Myart's personal stake in this action. To facilitate this jurisdictional inquiry, the Court directs Mr. Myart to provide certified copies of the loan applications and other relevant documents referenced in his complaint.

In light of the facts and circumstances of this case, the Court considers whether Mr. Myart or the other *pro se* plaintiffs have engaged in sanctionable conduct. The federal courts possess the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir.1993). Within this inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id.* The Supreme Court, furthermore, has recognized "that a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This power naturally extends to sanctioning parties who proceed without counsel as well as a former attorney who purports to act pursuant to a power of attorney.

At this point, the Court finds no potentially sanctionable conduct by the Hills, but is greatly

disturbed by the actions of Mr. Myart in filing this action on behalf of the Hills. In addition, the possibility exists that Mr. Myart included himself as a plaintiff merely so that he could somehow act as a *pro se* attorney/consultant for all plaintiffs. It is not unreasonable to expect a former attorney to know and understand the law regarding filing a civil action and practicing law before this Court. Mr. Myart's actions are particularly troubling given the injunction imposed against him by the Supreme Court of Texas. Among other things, that injunction specifically forbids Mr. Myart from practicing law in Texas, providing legal services for others, giving legal advice to others, accepting any fee for legal services, or appearing in a representative capacity in any proceeding in any Texas court. At least arguably, his actions in this case violate that injunction and he cannot sidestep the injunction by claiming he acts only as a consultant[2] or an interested *pro se* co-plaintiff.

In Texas, an individual can be criminally prosecuted for the unauthorized practice of law. *See* Tex. Penal Code Ann. § 38.123. Texas law, furthermore, defines "practice of law" as

> the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.

Tex. Gov't Code Ann. § 81.101(a). In general, courts prohibit "the unauthorized practice of law because of a perceived need to protect individuals and the public from the mistakes of the untrained and the schemes of the unscrupulous, who are not subject to the judicially imposed disciplinary standards of competence, responsibility and accountability." *See* Texas Center for Legal Ethics,

---

[2] In the complaint, Plaintiffs allege that they submitted a completed loan application "in order to pay to Myart Consulting Group a $15,000 fee plus expenses of suit, estimated at $25,000, for their lawsuit against the City of Sweetwater, et al." *See* Compl. at 4.

https://www.legalethicstexas.com/Ethics-Resources/Rules/Texas-Disciplinary-Rules-of-Professional-Conduct/V--LAW-FIRMS-AND-ASSOCIATIONS/5-05-Unauthorized-Practice-of-Law (last visited Mar. 1, 2017). The Court thus issues the following orders:

(1) On or before March 13, 2017, Mr. Myart shall provide an address for Christopher Hill and Harriet Hill so that the Court can mail them a copy of this order directly.

(2) On or before March 30, 2017, Mr. Myart shall show cause in writing why the Court should not dismiss this action as to him for his lack of standing. As exhibits to his show cause response, Mr. Myart shall provide certified copies of the loan applications and other relevant documents referenced in his complaint. Given the typical confidentiality of such documents, Mr. Myart shall separately file the exhibits under seal. If Mr. Myart shows that he has standing to pursue a claim against defendants, the Court will consider severing his claims from any claims of the Hills given the injunction by the Supreme Court of Texas.

(3) On or before March 30, 2017, Mr. Myart shall show cause in writing why the Court should not impose sanctions against him for violating the injunction issued by the Supreme Court of Texas or otherwise engaging in the unauthorized practice of law in this Court. Sanctions to be considered include a monetary sanction payable to the Court or to the other plaintiffs as his purported consulting clients; disgorgement of any improper fees obtained from his sanctionable conduct; a report to the Unauthorized Practice of Law Committee ("UPLC") or other appropriate discipline committee that oversees attorneys or former attorneys; prohibiting Mr. Myart from any further involvement in this case as to the Hills; and any other sanction the Court deems reasonable under the circumstances. If Mr. Myart believes that the Supreme Court of Texas has lifted or invalidated the order accepting his resignation as an attorney and issuing the injunction, Mr. Myart shall provide a

copy of the subsequent order of the Supreme Court of Texas.

(4) On or before March 30, 2017, Plaintiffs shall either pay the filing and administrative fees for this action ($400.00)[3] or each of them shall file a properly signed and completed IFP Motion (form AO 239 can be found on the Court's official web site).

(5) On or before March 30, 2017, the Hills shall file an amended complaint that is properly prepared and signed by them or filed through a licensed attorney. The amended complaint should only address their own claims. They are directed to read Rule 11 of the Federal Rules of Civil Procedure so that they are aware of what their signatures certify to the Court. The Court also encourages them to seek advice from a licensed attorney unconnected to Mr. Myart so as to obtain appropriate legal advice as to the issues they are facing.

**A failure to comply with this order may result in dismissal of this action – in part or in its entirety – for lack of jurisdiction or pursuant to Fed. R. Civ. P. 41(b) without further notice.**

IT IS SO ORDERED this 2nd day of March, 2017.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE

---

[3]In addition to the filing fee of $350, the District Court Miscellaneous Fee Schedule, effective May 1, 2013, requires payment of an administrative fee of $50.00 for filing a civil action in district court. *See* 28 U.S.C. § 1914(a) and District Court Miscellaneous Fee Schedule, note 14. This results in total fees of $400 for a civil action.